IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| JERROD RICKARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **COMPLAINT** |
| ) | (JURY TRIAL DEMANDED) |
| AMERICAN HONDA MOTOR ) | |
| CO., INC. ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Plaintiff Jerrod Rickard ("Plaintiff"), by and through the undersigned legal counsel, does hereby complain of Defendant American Honda Motor Co., Inc. ("Defendant" and/or "company") as follows:

1. Plaintiff is a citizen and resident of the County of Florence, State of South Carolina.

2. Upon information and belief, Defendant is a corporation duly organized and existing under the laws of the State of California and has one of its principal places of business in Florence, South Carolina.

3. Defendant owns property and transacts business at 1111 Honda Way, Timmonsville, South Carolina ("the facility"). Upon information and belief, the Defendant employs more that five-hundred (500) employees.

4. At the facility, Defendant builds powersports products for sale and distribution and has done so for more than twenty-five (25) years.

5. The acts, conduct, and/or omissions complained of herein occurred at the facility in Florence County, South Carolina.

6. At all times relevant hereto, Defendant has conducted substantial, continuous, and systematic business activities in this judicial district.

7. This action arises, in part, under both the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, and South Carolina statutory/common law.

8. This Court has jurisdiction in this matter, since it involves federal laws. Venue is also appropriate in this judicial district, since a substantial part of the events giving rise to the lawsuit occurred here.

1

9.     Plaintiff has exhausted all of his requisite administrative prerequisites to filing suit in this matter, including the filing of the instant Complaint within ninety (90) days of his receipt a Notice of Right to Sue from the U.S. Equal Employment Opportunity Commission issued on January 27, 2025.

**FOR A FIRST CAUSE OF ACTION**
(UNLAWFUL DISCRIMINATION/RETALIATION IN VIOLATION OF THE AMERICAN'S WITH DISABILITIES ACT, 42 U.S.C. § 12101 *et seq.* ("ADA"))

10.     Plaintiff realleges and reiterates each and every allegation set forth above, as if fully stated herein.

11.     At all times relevant hereto, Plaintiff was employed by the Defendant, and most recently held the position of Assistant Manager of Tech Line at the facility. As well, the Plaintiff's job performance was always at least satisfactory.

12.     Plaintiff began his employment with the Defendant on or around April 21, 2006.

13     Throughout his employ with the Defendant, Plaintiff and his wife attempted unsuccessfully to conceive children, but were unable to do so due to fertility difficulties.

14.     On or around August 8, 2023, Defendant notified the Plaintiff of a new security system ("the system"), which would require him to walk through a scanning machine upon his entry into the facility.

15.     Undeniably, the new system emitted low levels of radiation, which can negatively impact fertility, primarily by damaging reproductive cells like sperm.

16.     On or around August 21, 2023, Plaintiff informed the Defendant of his health and safety concerns regarding the new system, resulting from his ongoing infertility and desire to have children. In particular, the Defendant was informed that the Plaintiff was concerned that the levels of radiation would further negatively effect his health.

17.     On or around September 12, 2023, Plaintiff again informed the Defendant of his medical concerns regarding the new system.

18.     On or around September 12, 2023, Plaintiff promptly began taking the appropriate steps to secure the requested paperwork for a medical waiver.

19.     On or around September 18, 2023, Defendant installed the system.

20.     Thereafter, the Defendant's security personnel willfully, wanton, and/recklessly informed the Plaintiff that he would be required to pass through the system upon entry.

21.     Plaintiff requested from the Defendant that his infertility be accommodated by either allowing him to use an alternative entrance, by consenting to his being physically patted down,

and/or by using a non-radiation emitting wand to be used on his person. Defendant willfully, wanton, and/recklessly refused Plaintiff's request for accommodation.

22.     Subsequently, on or around September 25, 2023, Plaintiff had a meeting with the Defendant's upper management personnel and was informed that he would then be required to provide "medical paperwork" concerning his fertility issues within twenty-one (21) days of the meeting.

23.     On or around October 3, 2023, and before expiration of the twenty-one (21) days afforded to the Plaintiff in which to secure the requested paperwork, the Plaintiff was willfully, wantonly, and/recklessly suspended by the Defendant.

24.     On or around October 6, 2023, and before expiration of the twenty-one (21) days afforded to the Plaintiff in which to secure the requested paperwork, the Plaintiff was willfully, wantonly, and/recklessly terminated by the Defendant, allegedly due to a failure to follow instructions related to his usage of the system.

25.     The Defendant's stated reason for the Plaintiff's reason for termination was pretextual.

26.     The Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, makes it unlawful for an employer to discriminate against an employee on the basis of a disability and/or retaliate against an employee who has opposed an unlawful employment practice.

27.     The Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., further make it unlawful for any person to discharge or in any manner discriminate against any employee because they have complained of an unlawful employment practice.

28.     Plaintiff is "disabled" and/or was "perceived to be disabled" as those terms are defined by law. Plaintiff has a disability. In particular, Plaintiff suffers from and has been diagnosed with infertility, a recognized disability for purposes of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* Plaintiff also complained of both his unlawful disability discrimination and/or the unlawful employment practices to Defendant during his employ.

29.     Subsequent to his complaints of unlawful employment practices, Defendant unlawfully, willfully, wantonly, and/or recklessly discriminated/retaliated against the Plaintiff by refusing to accommodate his disability, suspending him, and by terminating him.

30.     By its unlawful, willful, wanton, and/or reckless acts, conduct, and/or omissions, Defendant unlawfully, willfully, wantonly, and/or recklessly subjected the Plaintiff to unlawful discrimination/retaliation in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*

31.     Defendant is liable for the unlawful, willful, wanton, and/or reckless acts, conduct, and/or omissions alleged herein, since their upper-level management established the corporate culture which encouraged unlawful discrimination/retaliation.

32. Defendant allowed the unlawful discrimination/retaliation complained of herein to go unremedied for so long that it amounts to a policy or practice and constitutes its standard operating procedure.

33. By its unlawful, willful, wanton, and/or reckless acts, conduct, and/or omissions described herein, Defendant unlawfully, willfully, wantonly, and/or recklessly subjected Plaintiff to unlawful discrimination/retaliation in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*.

34. Defendant's unlawful, willful, wanton, and/or reckless acts, conduct, and/or omissions were on account of the Plaintiff's disability and his complaints concerning unlawful employment practices.

35. As a direct and proximate result of the aforesaid unlawful, willful, wanton, and/or reckless acts, conduct, and/or omissions, the Defendant has intentionally, maliciously, and recklessly deprived the Plaintiff of certain benefits, rights, emoluments, wages, back/front pay, privileges, terms and conditions of employment, and continued employment because of his disability, his requests for accommodation of that disability, and his complaints concerning unlawful employment practices.

36. As a direct and proximate result of the aforesaid unlawful, willful, wanton, and/or reckless acts, conduct, and/or omissions, the Plaintiff is entitled to such affirmative relief as may be appropriate, including, but not limited to lost wages, attorney's fees, and other disbursements.

37. As a direct and proximate result of the aforesaid unlawful, willful, wanton, and/or reckless acts, conduct, and/or omissions, the Plaintiff has/will suffer future pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and such other non-pecuniary losses as may be proven at trial.

38. As a direct and proximate result of the aforesaid intentional, malicious, and reckless acts, conduct, and/or omissions, Plaintiff is entitled to an award of punitive damages, in an actual amount to be determined by a jury.

39. As a direct and proximate result of the aforesaid intentional, malicious, and reckless acts, conduct, and/or omissions, Plaintiff is also entitled to reinstatement of his employment with the Defendant, with appropriate promotions and seniority.

**FOR A SECOND CAUSE OF ACTION**
(FAILURE TO ACCOMODATE IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12101 ET. SEQ. ("ADA"))

40. Plaintiff realleges and reiterates each and every allegation set forth above, as if fully stated herein.

41. At all times relevant hereto, Plaintiff was an individual who had a disability within the meaning of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*. In particular, Plaintiff suffers from and has been diagnosed with infertility, a recognized disability.

42. The Defendant had notice of the Plaintiff's disability.

43. With reasonable accommodation, the Plaintiff could perform the essential functions of his position.

44. Defendant unlawfully, willfully, wantonly, and/or recklessly both refused to make the reasonable accommodations offered by the Plaintiff and/or engage in any meaningful discussion of what accommodation could be offered.

45. Defendant's unlawful, willful, wanton, and/or reckless acts, conduct, and/or omissions were on account of the Plaintiff's disability, his requests for accommodation of that disability, and his complaints concerning unlawful employment practices.

46. As a direct and proximate result of the aforesaid unlawful, willful, wanton, and/or reckless acts, conduct, and/or omissions, the Defendant has intentionally, maliciously, and recklessly deprived the Plaintiff of certain benefits, rights, emoluments, wages, back/front pay, privileges, terms and conditions of employment, and continued employment because of his disability, his requests for accommodation of that disability, and his complaints concerning unlawful employment practices.

47. As a direct and proximate result of the aforesaid unlawful, willful, wanton, and/or reckless acts, conduct, and/or omissions, the Plaintiff is entitled to such affirmative relief as may be appropriate, including, but not limited to lost wages, attorney's fees, and other disbursements.

48. As a direct and proximate result of the aforesaid unlawful, willful, wanton, and/or reckless acts, conduct, and/or omissions, the Plaintiff has/will suffer future pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and such other non-pecuniary losses as may be proven at trial.

49. As a direct and proximate result of the aforesaid intentional, malicious, and reckless acts, conduct, and/or omissions, Plaintiff is entitled to an award of punitive damages, in an actual amount to be determined by a jury.

50. As a direct and proximate result of the aforesaid intentional, malicious, and reckless acts, conduct, and/or omissions, Plaintiff is also entitled to reinstatement of his employment with Defendant, with appropriate promotions and seniority.

## **FOR A THIRD CAUSE OF ACTION**
(UNLAWFUL DISCRIMINATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C. § 621 *et seq.*
("ADEA"))

51.     Plaintiff realleges and reiterates each and every allegation set forth above, as if fully stated herein.

52.     The ADEA prohibits employers from discriminating against employees or prospective employees because of the individual's age. 29 U.S.C. § 623(a). In this regard, the ADEA's protections apply to individuals at least 40 years of age.

53.     At the time of the Plaintiff's termination of employment from the Defendant, he was fifty-two (52) years of age and was a member of a protected class of individuals at least 40 years of age for purposes of the ADEA.

54.     At all times relevant hereto, Plaintiff's job performance was at least satisfactory.

55.     At all times relevant hereto, the Plaintiff was unlawfully, willfully, wantonly, and/or recklessly subjected to an adverse employment action (ie. suspension and/or unlawful termination).

56.     At all times relevant hereto, similarly situated employees outside the protected age class (ie. younger) received more favorable treatment and were not suspended and/or terminated.

57.     Shortly before the Plaintiff's termination, Plaintiff informed his supervisor that he planned to retire due to his age in the near future.

58.     Almost immediately thereafter, the Plaintiff was terminated.

59.     By terminating the Plaintiff when it did, the Plaintiff was deprived of almost $300,000.00 in unpaid retirement benefits.

60.     Defendant's unlawful, willful, wanton, and/or reckless acts, conduct, and/or omissions were on account of the Plaintiff's age and his complaints concerning unlawful employment practices.

61.     As a direct and proximate result of the aforesaid unlawful, willful, wanton, and/or reckless acts, conduct, and/or omissions, the Defendant has intentionally, maliciously, and recklessly deprived the Plaintiff of certain benefits, rights, emoluments, wages, back/front pay, privileges, terms and conditions of employment, and continued employment because of his disability, his requests for accommodation of that disability, and his complaints concerning unlawful employment practices.

62. As a direct and proximate result of the aforesaid unlawful, willful, wanton, and/or reckless acts, conduct, and/or omissions, the Plaintiff is entitled to such affirmative relief as may be appropriate, including, but not limited to lost wages, attorney's fees, and other disbursements.

63. As a direct and proximate result of the aforesaid unlawful, willful, wanton, and/or reckless acts, conduct, and/or omissions, the Plaintiff has/will suffer future pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and such other non-pecuniary losses as may be proven at trial.

64. As a direct and proximate result of the aforesaid intentional, malicious, and reckless acts, conduct, and/or omissions, Plaintiff is entitled to an award of punitive damages, in an actual amount to be determined by a jury.

65. As a direct and proximate result of the aforesaid intentional, malicious, and reckless acts, conduct, and/or omissions, Plaintiff is also entitled to reinstatement of his employment with Defendant, with appropriate promotions and seniority, as well as liquidated damages equal to the amount of back pay the Plaintiff is entitled to.

## FOR A FOURTH CAUSE OF ACTION
(BREACH OF CONTRACT/EMPLOYEE HANDBOOK)

66. Plaintiff realleges and reiterates each and every allegation set forth above, as if fully stated herein.

67. During the course of the Plaintiff's employment with the Defendant, the Plaintiff was provided with an employee handbook.

68. The employee handbook provided, in relevant part, that:

Honda is committed to the policy of Anti-Discrimination and Equal Employment Opportunity for all persons and does not discriminate in recruitment, testing, screening, hiring, selection for training, transfer, promotion, demotion, layoff, discipline, termination, compensation, or administering any other personnel actions because of race, color, religion/religious creed, sex, gender, sex stereotyping (including assumptions about a person's appearance or behavior, gender roles, gender expression, or gender identity), pregnancy (which includes pregnancy, childbirth and medical conditions related to pregnancy, childbirth or breastfeeding), national origin, ancestry, citizenship status, age (any age), weight, height, marital status, physical or mental disability, a legally-protected medical condition (which includes sickle cell trail or hemoglobin C trait), sexual orientation, genetic information, military or veteran status (which includes status in North Carolina's National Guard), an individual's juvenile record that has been expunged pursuant to Oregon law or misdemeanor arrest record, performance of a duty in a uniformed service, work-related injury or illness, use of the workers' compensation system, association with any characteristic protected by local, state or federal law, or any

7

other characteristic protected by local, state, and federal law. Employment decisions shall comply with all applicable laws prohibiting discrimination in employment, including Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, the Immigration Reform and Control Act of 1986, the Americans with Disabilities Act of 1990, the Uniformed Services Employment and Reemployment Rights Act, and any other applicable federal, state, or local laws. Honda interprets these protected statuses broadly to include both the actual status and any perceptions and assumptions made regarding these statuses.

Selection for employment is based on qualifications for the job. Applicants are evaluated based on capabilities and expected contribution and without regard to any characteristic protected by local, state, or federal law. Post-hire opportunities such as training, career development, reassignment and promotion are also governed by the above criteria, in addition to the associate's competence, performance, job assignments and performance appraisals and without regard to any characteristic protected by local, state, or federal law. All associates must follow this policy. Any associate who violates this policy will be subject to disciplinary action, up to and including separation of employment. The Company is committed to the practice of equal employment opportunity. Intimidation or retaliation against associates or applicants because they engaged in or may engage in filing a complaint of discrimination or retaliation; assist or participate in any investigation conducted by the Company related to any issue, including EEO, harassment, retaliation, or business conduct; oppose any act or practice made unlawful by any local, state, or federal law; or for exercising any other legally protected right is prohibited.

The Company also makes reasonable accommodations for qualified applicants and associates with disabilities unless doing so creates an undue hardship, in accordance with all legal requirements. Any applicant or associate who requires an accommodation to perform the essential functions of the job should contact Human Resources to request that accommodation. The Company will work with that individual to attempt to identify a reasonable accommodation that will not impose an undue hardship on the Company…

Intimidation or retaliation against associates, vendors, customers, applicants, or other persons because they engaged in or may engage in filing a complaint of discrimination or retaliation; assist another associate, vendor, customer, applicant, or other person in making a report; cooperate in any investigation conducted by the Company related to any issue, including EEO, harassment, retaliation, or business conduct; oppose any act or practice made unlawful by any local, state, or federal law; or for exercising any other legally-protected right, is prohibited. Adverse action need not be job-related or occur in the workplace to constitute unlawful retaliation (e.g., threats of physical violence outside of work hours). Such retaliation is unlawful under federal, state, and (where applicable) local law…

69.     In reliance upon the employee handbook provisions, the Plaintiff agreed to be employed by the Defendant.

70.     The employee handbook modified the parties at-will employment relationship, such that the handbook constituted either an expressed and/or implied contract of employment.

71.     The provisions of the handbook applied to both the Plaintiff and the Defendant.

72.     The handbook sets out procedures binding upon the Defendant.

73.     Despite such, the Defendant unlawfully, willfully, wantonly, and/or recklessly breached the terms of the employee handbook as set forth herein, including the unlawful suspension, termination, failure to accommodate, and/or retaliation against the Plaintiff.

74.     The handbook also did not contain a conspicuous and appropriate disclaimer. No disclaimer was underlined, in capital letters, or on the first page of the handbook. Any disclaimer was also not signed by the Plaintiff.

75.     As a direct and proximate result of the aforesaid unlawful, willful, wanton, and/or reckless acts, conduct, and/or omissions, the Defendant has intentionally, maliciously, and recklessly deprived the Plaintiff of certain benefits, rights, emoluments, wages, back/front pay, privileges, terms and conditions of employment, and continued employment because of his disability, his requests for accommodation of that disability, and his complaints concerning unlawful employment practices.

76.     As a direct and proximate result of the aforesaid unlawful, willful, wanton, and/or reckless acts, conduct, and/or omissions, the Plaintiff is entitled to such affirmative relief as may be appropriate, including, but not limited to lost wages, attorney's fees, and other disbursements.

77.     As a direct and proximate result of the aforesaid unlawful, willful, wanton, and/or reckless acts, conduct, and/or omissions, the Plaintiff has/will suffer future pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and such other non-pecuniary losses as may be proven at trial.

78.     As a direct and proximate result of the aforesaid intentional, malicious, and reckless acts, conduct, and/or omissions, Plaintiff is entitled to an award of punitive damages, in an actual amount to be determined by a jury.

79.     As a direct and proximate result of the aforesaid intentional, malicious, and reckless acts, conduct, and/or omissions, Plaintiff is also entitled to reinstatement of his employment with Defendant, with appropriate promotions and seniority.

## FOR A FIFTH CAUSE OF ACTION
(BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)

80.Plaintiff realleges and reiterates each and every allegation set forth above, as if fully stated herein.

81.An implied covenant of good faith and fair dealing existed in the employee handbook/contract.

82.Within the employee handbook/contract, there existed an implied covenant of good faith and fair dealing.

83.The willful, wanton, and/or reckless acts, conduct and/or omissions of the Defendant and complained of herein breached the implied covenant of good faith and fair dealing existing between the parties.

84.As a direct and proximate result of the willful, wanton, and/or reckless acts, conduct, breaches, and/or omissions of the Defendant, the Plaintiff has suffered actual and/or compensatory damages, including lost wages, agreed to contractual monies, pre-judgment and post-judgment interest, suit costs, and attorney's fees, all in an actual amount to be determined by a jury.

## JURY TRIAL DEMAND

85.Plaintiff is informed and believes that he is entitled to a trial by jury and demands same.

WHEREFORE, Plaintiff prays that:

(1)This Court Order reinstatement of the Plaintiff to his prior position and enjoin the Defendant from continuing their unlawful practices;

(2)This Court compensate and make whole the Plaintiff by granting judgment against the Defendant in an actual amount to be determined by a jury for actual/compensatory damages and such other relief as the court deems appropriate;

(3)This Court award Plaintiff the costs and disbursements of this action, including reasonable attorney's fees;

(4)This Court award Plaintiff punitive damages, in an actual amount to be determined by jury;

(5)      This Court award Plaintiff liquidated damages, in an actual amount equal to the amount of back pay the Plaintiff is entitled to; and

(6)      This Court grant such other relief as is just and equitable, including prejudgment and post-judgment interest.

WILLCOX, BUYCK & WILLIAMS, P.A.

By:    s/J. Scott Kozacki
        J. Scott Kozacki
        Federal #5456
        PO Box 1909
        Florence, SC 29503-1909
        (843) 662-3258 Telephone
        (843) 662-1342 Fax
        Email: skozacki@willcoxlaw.com
        ATTORNEY FOR PLAINTIFF

April 22, 2025
Florence, South Carolina